IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| THOSE CERTIN UNDERWRITERS AT LLOYD'S, LONDON, | * |
| | * |
| *Plaintiff*, | * |
| | *   Civil Action No. RDB-23-405 |
| v. | * |
| SANDRA MOYER *et al.*, | * |
| | * |
| *Defendants*. | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

This case involves a coverage question under a professional services liability policy, which Plaintiff Those Certain Underwriters at Lloyd's, London ("Underwriters") sold to Defendant Home Point Financial Corporation (the "Insured" or "Home Point"). Home Point is currently a defendant in a separate class action lawsuit in this Court alleging violations of the Real Estate Settlement Procedures Act ("RESPA"). *Moyer et al. v. Mr. Cooper Group, Inc.*, No. RDB-20-3449 (D. Md. filed Nov. 25, 2020). Underwriters filed a one-count Complaint, seeking declaratory judgment that it has neither a duty to defend nor a duty to indemnify Home Point in the underlying RESPA litigation. (ECF No. 1.)[1] With respect to the Underwriters' duty to indemnify, several of the five named Defendants in this action have argued that, because there has been no determination of liability in the underlying RESPA

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

1

litigation, the issue of indemnification is not ripe. (*See* ECF Nos. 10, 11.) With respect to the Underwriters' duty to defend, Home Point filed an Answer, (ECF No. 12), asserting three Counterclaims against Underwriters—one counterclaim for breach of contract ("Counterclaim I"); one counterclaim for breach of fiduciary duty ("Counterclaim II"); and one counterclaim for declaratory judgment concerning Underwriters' duty to defend ("Counterclaim III"). (*Id.*)

Presently pending in the above-captioned case are five motions. (ECF Nos. 10, 11, 29, 30, 31.) Specifically, Home Point has filed a Partial Motion to Dismiss ("Home Point's Partial Motion to Dismiss") (ECF No. 11), which seeks to dismiss Count I of Underwriters' Complaint insofar as it seeks a determination that Underwriters have no duty to indemnify Home Point in the underlying litigation; as well as a Motion for Judgment on the Pleadings ("Home Point's Motion for Judgment on the Pleadings") (ECF No. 29), which seeks an order for judgment on the pleadings in Home Point's favor on Underwriters' claim for declaratory judgment that Underwriters has no duty to defend Home Point in the underlying lawsuit and on Home Point's corresponding Counterclaim III. Underwriters have also filed a Motion for Judgment on the Pleadings ("Underwriters' Motion for Judgment on the Pleadings") (ECF No. 30) (collectively with Home Point's Motion for Judgment on the Pleadings, the "Cross-Motions for Judgment on the Pleadings"), which seeks an order for judgment on the pleadings in Underwriters' favor on Underwriters' claim for declaratory judgment that Underwriters has no duty to defend or indemnify Home Point in the underlying lawsuit and on Home Point's corresponding Counterclaim III. Defendants Richard Martin ("Martin"),

Yvonne Matthews[2] ("Matthews"), and Terry Patterson ("Patterson"), who are named plaintiffs in the underlying RESPA litigation, have filed a Motion to Dismiss Underwriters' Complaint ("Martin, Matthews, and Patterson's Motion to Dismiss") (ECF No. 10); as well as a Motion to Strike the Cross-Motions for Judgment on the Pleadings ("Martin, Matthews, and Patterson's Motion to Strike") (ECF No. 31).

The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Home Point's Partial Motion to Dismiss (ECF No. 11) is GRANTED. Specifically, Count I of Underwriters' Complaint (ECF No. 1) is PARTIALLY DISMISSED WITHOUT PREJUDICE insofar as it seeks a determination that Underwriters have no duty to indemnify Home Point in the underlying litigation.

Because the issue of the Underwriters' duty to indemnify is not ripe, Underwriters lack standing to sue Defendants Sandra Moyer ("Moyer"),[3] Martin, Matthews, and Patterson, as no real dispute exists—at least, for now—between the Underwriters and the named plaintiffs in the underlying RESPA lawsuit. As such, all claims asserted against Moyer, Martin, Matthews, and Patterson are DISMISSED WITHOUT PREJUDICE. Thus, Martin, Matthews, and Patterson's Motion to Dismiss (ECF No. 10) and Motion to Strike (ECF No. 31) are both DENIED AS MOOT.

Turning to the Cross-Motions for Judgment on the Pleadings (ECF Nos. 29, 30), which this Court construes to be solely on the issue of the Underwriters' duty to defend Home Point in the Underlying Lawsuit, Home Point's Motion for Judgment on the Pleadings (ECF No.

---

[2] This Defendant's last name is inconsistently spelled throughout the filings, appearing sometimes as "Matthews" and other times as "Mathews." The Court uses the former spelling in conformity with the caption.
[3] The record is unclear as to whether service has been properly effectuated against Defendant Moyer.

29) is GRANTED. Specifically, with respect to the Underwriters' duty to defend Home Point in the underlying RESPA lawsuit, judgment is entered in favor of Home Point with respect to Count I of the Underwriters' Complaint (ECF No. 1) and Counterclaim III of Home Point's Answer and Counterclaims (ECF No. 12). Accordingly, Underwriters' Motion for Judgment on the Pleadings (ECF No. 30) is DENIED.

To be clear, this Memorandum Opinion does not address Home Point's Counterclaims for breach of contract (Counterclaim I) and breach of fiduciary duty (Counterclaim II) against the Underwriters, as such counterclaims are triable issues that shall proceed to discovery.

## BACKGROUND

On a motion for judgment on the pleadings, as in a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002); *see also Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). This Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### I. The Policy

On November 12, 2020, the Underwriters sold Home Point a "Professional Services Liability Policy," Policy No. SUAWS20137-2006 (the "Policy") for the policy period of October 15, 2020 to October 15, 2021 (the "POLICY PERIOD").[4] (ECF No. 1-1 at 7.) The Policy was delivered to, and the premiums were paid from, Ann Arbor, Michigan, where Home Point is headquartered. (ECF No. 12 at 11.)

---

[4] Capitalized terms are defined in the Policy. (ECF No. 1-1.)

The Policy's Insuring Agreement requires the Underwriters to pay on behalf of the INSURED—defined in the Policy as Home Point, (ECF No. 1-1 at 7, 9)—LOSS resulting from a CLAIM:

> The Company will pay on behalf of the INSURED LOSS in excess of the Retention stated in Item 4 of the Declarations which the INSURED shall become legally obligated to pay as a result of any CLAIM first made against the INSURED during the POLICY PERIOD for a WRONGFUL ACT that occurred on or after the Retroactive Date stated in Item 6 of the Declarations.[5]

(*Id.* at 7.)  LOSS is defined to include "money damage, settlements, and DEFENSE COSTS," and explicitly excludes "punitive or exemplary damages or the multiplied portion of a multiplied damages award," "criminal or civil fines or penalties imposed by law," "taxes," and "matters that may deemed uninsurable under the law pursuant to which this Policy shall be construed."  (*Id.* at 10–11.)  The Policy defines CLAIM as "a written demand for money damages received by an INSURED, including service of suit and the institution of administrative or arbitration proceedings."  (*Id.* at 11.)  DEFENSE COSTS are "reasonable legal fees and expenses incurred with the approval of the Company in connection with the investigation, adjustment, settlement, defense or appeal of a CLAIM made against an INSURED for a WRONGFUL ACT."  (*Id.* at 50.)  WRONGFUL ACT is defined as "any actual or alleged negligent act, negligent error or negligent omission committed by the INSURED solely in the performance of or failure to perform professional services for others in the INSURED'S Profession as [MORTGAGE BANKER/MORTGAGE BROKER]."  (*Id.* at 7, 10.)  The Policy provides that the Underwriters "have the right and duty to defend any CLAIM against the INSURED to which this insurance applies, even if the allegations of

---

[5] The Policy provides $5,000,000 in limits subject to a $100,000 self-insured retention.  (ECF No. 1-1 at 7.)

the CLAIM are groundless, false or fraudulent." (*Id.* at 49.)

The Policy further provides that it does not apply to LOSS in connection with any CLAIM:

> S. based upon or directly or indirectly arising out of or resulting from any actual or alleged MONEY LAUNDERING or any actual or alleged act which is in breach of and/or constitutes an offence under any money laundering legislation (or any provisions and/or rules or regulations made by any regulatory body or authority thereunder); [or]
>
> T. based upon or directly or indirectly arising out of or resulting from any actual or alleged advertising or solicitation activities of an INSURED[.]

(*Id.* at 16.)

## II. The Underlying Lawsuit

On October 27, 2020, Sandra Moyer, Richard Martin, Yvonne Matthews, and Terry Patterson filed a putative class action complaint and demand for jury trial against Home Point in state court (the "Underlying Lawsuit" or "RESPA Lawsuit"). (ECF No. 1-2.) Through their one-count complaint, Moyer, Martin, Matthews, and Patterson allege violations of 12 U.S.C. § 2607(a), a RESPA provision that prohibits the payment of referral fees in connection with federally related mortgage loans. (*Id.*) Specifically, the claims arise out of an alleged kickback scheme between Home Point's predecessor, Maverick Funding Corporation ("Maverick"), and All Star Title, Inc. ("All Star"), a now-defunct title and settlement services company, whereby Maverick referred residential mortgage loans to All State for title and settlement services in exchange for payments from All Star that were laundered through third-party marketing companies. (*Id.*)

On November 15, 2020, Home Point removed the Underlying Lawsuit to this Court, which is assigned to the Undersigned Judge under the caption of *Moyer et al. v. Mr. Cooper Group,*

6

*Inc.*, No. RDB-20-3449, and remains pending.  Most recently, this Court granted the class action plaintiffs' motion for class certification.  *See Moyer et al. v. Mr. Cooper Group, Inc.*, No. RDB-20-3449 (D. Md. Oct. 11, 2023), ECF Nos. 73, 74.

### III.   Notice of the Underlying Lawsuit

On November 9, 2020, Home Point provided the Underwriters notice of the Underlying Lawsuit.  (ECF No. 1-3.)  On December 4, 2020, the Underwriters, through their counsel, "[wrote] to advise [Home Point] that Underwriters agree to defend Home Point under the Policy with respect to the [Underlying Lawsuit] . . . subject to a reservation of all rights, remedies, and defenses that may be available to [Underwriters] with respect to this matter." (*Id.*)

### IV.   The Instant Litigation

On February 13, 2023, the Underwriters initiated the instant insurance dispute.  The Underwriters' one-count Complaint (ECF No. 1) seeks declaratory judgment that the Underwriters have no duty to defend or indemnify the Underlying Lawsuit.  In addition to naming its insured Home Point as a Defendant, Underwriters also name the named plaintiffs in the RESPA Lawsuit—Moyer, Martin, Matthews, and Patterson—as Defendants in the instant lawsuit.  (*Id.*)

The record is unclear as to whether service has been properly effectuated against Defendant Moyer.  However, the other four Defendants in this case—Martin, Matthews, Patterson, and Home Point—have responded to the Underwriters' Complaint.  (ECF Nos. 10, 11, 12.)  Specifically, Defendants Martin, Matthews, and Patterson moved to dismiss the Complaint (ECF No. 10), contending dismissal is appropriate because the Underwriters have

7

failed to allege sufficient facts to establish diversity jurisdiction; because the action is premature; and because the Underwriters have failed to state a claim for money damages against these three Defendants. (*Id.*) Notably, Underwriters did not oppose Martin, Matthews, and Patterson's Motion to Dismiss in a timely manner,[6] though the Underwriters argue in a footnote opposing the same Defendants' later-filed Motion to Strike that Martin, Matthews, and Patterson's Motion to Dismiss should be denied. (ECF No. 32 at 5 n.2.)

Defendant Home Point also partially moved to dismiss the Complaint insofar as the Underwriters seek a determination that Plaintiff has no duty to pay money damages or a settlement in the RESPA Lawsuit (ECF No. 11), as according to Home Point, the Underwriters lack constitutional standing on the question of indemnification at this stage. (*Id.*) The Underwriters responded in opposition (ECF No. 20), and Home Point replied (ECF No. 25).

With respect to the Underwriters' request seeking a declaratory judgment that it has no duty to defend Home Point in the RESPA Lawsuit, Home Point filed an Answer and Counterclaims (ECF No. 12). Therein, Home Point seeks declaratory judgment that its claims for defense of the Underlying Lawsuit are insured under the Policy and that the Underwriters have an immediate, several, and indivisible duty to defend Home Point under the Policy in the Underlying Lawsuit and pay its full defense costs (Counterclaim III). (*Id.*) In addition, Home Point alleges counterclaims for breach of contract (Counterclaim I) and breach of fiduciary duty (Counterclaim II) against the Underwriters. (*Id.*)

---

[6] Local rules provides that "[u]nless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion[.]" Local Rule 105.2 (D. Md. 2023). Here, the fourteen-day window to respond closed on May 25, 2023.

On the issue of the Underwriters' duty to defend, Home Point filed a Motion for Judgment on the Pleadings (ECF No. 29), with the Underwriters filing a cross-Motion for Judgment on the Pleadings (ECF No. 30), and Martin, Matthews, and Patterson filing a Motion to Strike the Cross-Motions for Judgment on the Pleadings (ECF No. 31).

The five-pending motions in this case are ripe for review.

## STANDARD OF REVIEW

### I.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true."  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  In determining whether jurisdiction exists, the district court "is to regard the pleading' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991).  The plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence.  *Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

## II. Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure authorizes a party to move for judgment on the pleadings any time after the pleadings are closed, as long as it is early enough not to delay trial. Fed. R. Civ. P. 12(c). The legal standard governing such a motion is the same as a motion to dismiss under Rule 12(b)(6). *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012). Therefore, a motion for judgment on the pleadings "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact. *Butler*, 702 F.3d at 752.

## III. Applicable Law

In diversity actions, a district court applies the substantive law and choice of law rules of the state in which the court sits. *Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 605 (D. Md. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In cases involving the interpretation of insurance policies, Maryland applies the doctrine of *lex loci contractus*, meaning the law of the place where the contract was made applies. *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). It is undisputed that the relevant insurance contracts were made in Michigan. Accordingly, Michigan law governs the interpretation of the Policy.

**ANALYSIS**

**I.     The Duty to Indemnify**

Home Point has moved to partially dismiss the Underwriters' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) insofar as Count I seeks a declaration on the Underwriters' duty to indemnify Home Point in the RESPA lawsuit.  (ECF No. 11.)  According to Home Point, the Underwriters' request for a declaratory judgment as to its duty to indemnify is premature, as duty to indemnify only attaches when an obligation to pay a money judgment arises and the Underlying Lawsuit is still ongoing.  (ECF No. 11-1 at 9–14; ECF No. 25 at 5–8.)  In opposition, the Underwriters argue that because the duty to defend is a live controversy, the duty to indemnify is also a live controversy.  (ECF No. 20 at 7–10.)

As the Underwriters appear to concede, (*id.* at 8–10), if this Court finds the Underwriters have a duty to defend Home Point, the request for a declaration on the duty to indemnify is premature.  The duty to defend is broader than the duty to indemnify.  *Penn America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004); *see also Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1021 (6th Cir. 2022) (explaining that under Michigan law, "[t]he [duty to defend] requires insurers to pay for the insured's legal counsel and litigation costs  when the policy arguably covers the alleged liability; the [duty to indemnify] requires them to pay the injured party any damages awarded against the insured for the covered loss") (citing *Farmers & Merchants Mut. Fire Ins. Co. v. Lemire*, 434 N.W.2d 253, 255 (Mich. Ct. App. 1988)).  As the United States Court of Appeals for the Fourth Circuit explained in *Trustguard Insurance Co. v. Collins*, 942 F.3d 195 (4th Cir. 2019), "suits about the duty to indemnify—unlike the duty-to-defend suits—would ordinarily be advisory when the insured's liability remains

11

undetermined." *Id.* at 200. Simply stated, there is no judgment to indemnify unless and until Home Point's liability is established in the Underlying Lawsuit. As such, it would be premature and speculative for this Court to issue declaratory relief on the issue of indemnification. For this reason, this Court concludes that it is inappropriate for it to exercise its jurisdiction on the issue of indemnification and will abstain from doing so.

Accordingly, Home Point's Partial Motion to Dismiss (ECF No. 11) is GRANTED. Specifically, Count I of the Underwriters' Complaint (ECF No. 1) is PARTIALLY DISMISSED WITHOUT PREJUDICE[7] insofar as the Underwriters seek a declaration on their duty to indemnify Home Point in the RESPA Lawsuit. The remainder of this Memorandum Opinion treats Count I of the Underwriters' Complaint as solely seeking a declaration on the duty to defend Home Point in the RESPA Lawsuit.

## II.   Underwriters' Standing to Sue Moyer, Martin, Matthews, and Patterson

Having concluded that it is inappropriate for this Court to exercise its jurisdiction on the issue of indemnification at this stage, this Court now considers whether the Underwriters have standing to sue the named plaintiffs in the RESPA Lawsuit on the issue of its duty to defend Home Point in the Underlying Lawsuit. Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. CONST. art. III., § 2. The Declaratory Judgment Act permits a court to "declare the rights and other legal relations

---

[7] As the Fourth Circuit has held, "[a] dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *Goldman v. Brink*, 41 F.4th 366, 369 (4th Cir. 2022) (alteration in original) (citing *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013)). "[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims." *S. Walk*, 713 F.3d at 185 (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006)).

of" interested parties "in a case of actual controversy." 28 U.S.C. § 2201. A court may not entertain a declaratory judgment claim in the absence of an underlying case or controversy. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937) ("The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy' . . . is operative only in respect to controversies which are such in the constitutional sense."). As such, an action for declaratory judgment does not escape the constitutional mandate that its proponent has standing and that it does not seek an advisory opinion. *See Trustgard*, 942 F.3d at 199 (finding that the court must address issues of Article III justiciability before considering the merits of a declaratory judgment action).

As noted *supra*, Underwriters' Complaint for declaratory judgment seeks to litigate the dispute not only against its insured, Home Point, but against the named plaintiffs in the RESPA Lawsuit—Moyer, Martin, Matthews, and Patterson. (ECF No. 1.) While Moyer, Martin, Matthews, and Patterson would undoubtedly be interested parties if the issue before this Court was the Underwriters' duty to indemnify Home Point, this Court has concluded that it is inappropriate for it to exercise its jurisdiction on the issue of indemnification at this stage.

Pursuant to the Court's above findings, the Underwriters' Complaint in the instant litigation is now limited to the Underwriters' duty to defend its Insured, Home Point. The Underwriters cannot litigate its duty to defend against Moyer, Martin, Matthews, and Patterson because this duty does not involve them. The duty to defend is a right affecting only the obligations of the insurer vis-à-vis the insured. Moyer, Martin, Matthews, and Patterson have not asked the Underwriters to prosecute or defend them in any lawsuit. Moreover, the named

13

plaintiffs in the RESPA Lawsuit have no stake in who prevails in the instant lawsuit. In other words, no real dispute exists—at least, for now—between the Underwriters and the named plaintiffs in the RESPA Lawsuit.

Finding that the Underwriters' claim for the duty to indemnify is not ripe and the Underwriters lack standing to sue Moyer, Martin, Matthews, and Patterson over its duty to defend—all claims asserted against Moyer, Martin, Matthews, and Patterson are DISMISSED WITHOUT PREJUDICE. Thus, Martin, Matthews, and Patterson's Motion to Dismiss (ECF No. 10) and Motion to Strike (ECF No. 31) are both DENIED AS MOOT.

## III.   The Duty to Defend

This Court now turns to the pending Cross-Motions for Judgment on the Pleadings (ECF Nos. 29, 30), which as explained *supra*, this Court construes to be solely on the issue of the Underwriters' duty to defend Home Point in the Underlying Lawsuit.[8] An insurer's duty to defend and its duty to indemnify are separate and distinct, and the duty to defend is broader than an insurer's duty to indemnify. *Auto-Owners Ins. Co. v. City of Clare*, 521 N.W.2d 480, 487 (Mich. 1994); *Polkow v. Citizens Ins. Co.*, 476 N.W.2d 382, 384–85 (Mich. 1991). The duty to defend arises in instances in which coverage is even arguable. *Auto-Owners Ins. Co.*, 521 N.W.2d at 487; *Polkow*, 476 N.W.2d at 384–85 ("The insurer's duty to provide a defense extends to allegations which even arguably come within the policy coverage."). At bottom, this Court finds that the complaint in the Underlying Lawsuit raises a possibility of coverage under the Policy, which is all that is required to trigger the Underwriters' duty to defend its Insured.

---

[8] This Memorandum Opinion does not address Home Point's Counterclaims for breach of contract (Counterclaim I) and breach of fiduciary duty (Counterclaim II) against the Underwriters, as such counterclaims are triable issues.

14

Under Michigan law, which controls this Court's interpretation of the Policy:

> The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage.

*Detroit Edison Co. v. Mich. Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1981). "An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." *Dochod v Cent. Mut. Ins Co.*, 264 N.W.2d 122, 124 (Mich. Ct. App. 1978). "The duty to defend cannot be limited by the precise language of the pleadings." *Detroit Edison*, 301 N.W.2d at 835. "The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible." *Id.* While it is Home Point's burden to prove coverage under the Policy, the Underwriters bear the burden of showing the applicability of policy exclusions. *See Hunt v. Drielick*, 852 N.W.2d 562, 566 (Mich. 2014).

The Policy's Insuring Agreement requires the Underwriters to pay on behalf of Home Point LOSS "result[ing from] any CLAIM first made against the INSURED during the POLICY PERIOD for a WRONGFUL ACT." (ECF No. 1-1 at 7). The Policy defines WRONGFUL ACT as "any actual or alleged negligent act, negligent error or negligent omission committed by the INSURED solely in the performance of or failure to perform professional services for others in the INSURED'S Profession as [MORTGAGE BANKER/MORTGAGE BROKER]." (*Id.* at 7, 10.)

The Underwriters argue that because the complaint in the Underlying Lawsuit alleges intentional conduct, it falls outside the Policy's scope of coverage. (ECF No. 1 ¶ 42.) Home

15

Point points out that several federal courts have assessed an insurer's duty to defend in the precise context of RESPA claims—and all have sided with the insured and found coverage. (ECF No. 29-1 at 11–13 (citing *Nowacki v. Federated Realty Grp., Inc.*, 36 F. Supp. 2d 1099 (E.D. Wis. 1999), *Pac. Ins. Co. v. Burnet Title, Inc.*, 380 F.3d 1061 (8th Cir. 2004); *PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 394 F.3d 761 (9th Cir. 2005)). This Court agrees with Home Point that these cases demonstrate that "federal courts have shown a tendency to favor coverage for RESPA claims under professional liability policies." *PMI Mortg.*, 394 F.3d at 769. This Court sees no reason why this case warrants a different result. The complaint in the Underlying Lawsuit mixes allegations of arguably negligent disclosure violations and arguably intentional kickback allegations, raising a possibility of coverage, which is all that is required to trigger the Underwriters' duty to defend. *Detroit Edison*, 301 N.W.2d at 835.

The Underwriters further argue that the Policy's MONEY LAUNDERING and solicitation exclusions bar coverage because the complaint in the Underlying Lawsuit alleges Home Point laundered kickback for payments from All Star through third-party marketing companies. (ECF No. 1 ¶¶ 45–47, 48–49.) Simply stated, the allegations in the Underlying Lawsuit's complaint do not come close to triggering the MONEY LAUNDERING exclusion for LOSS "based upon or directly or indirectly arising out of or resulting from any actual or alleged MONEY LAUNDERING or any actual or alleged act which is in breach of and/or constitutes an offence under any money laundering legislation (or any provisions and/or rules or regulations made by any regulatory body or authority thereunder)." (ECF No. 1-1 at 16.) As Home Point correctly notes, the Policy defines MONEY LAUNDERING as acts relating to CRIMINAL PROPERTY, meaning "property . . . obtained from or . . . in connection with

16

criminal conduct." (*Id.* at 11, 12.)  The complaint in the Underlying Lawsuit is wholly absent of any allegations that Home Point engaged in criminal conduct.  As such, this exclusion is irrelevant.

Considering the solicitation exclusion, which provides that the Policy does not apply to LOSS in connection with any CLAIM "based upon or directly or indirectly arising out of or resulting from any actual or alleged advertising or solicitation activities of an INSURED," (*id.* at 16), the complaint in the Underlying Lawsuit does not allege any causal relationship between any Home Point advertising or solicitation and the alleged RESPA violation.  As such, this exclusion is irrelevant.

Accordingly, and limited to considering the Underwriters' duty to defend Home Point in the Underlying Lawsuit, Home Point's Motion for Judgment on the Pleadings (ECF No. 29) is GRANTED, and the Underwriters' Motion for Judgment on the Pleadings (ECF No. 30) is DENIED.  Specifically, with respect to the Underwriters' duty to defend Home Point in the underlying RESPA Lawsuit, judgment is entered in favor of Home Point with respect to Count I of the Underwriters' Complaint (ECF No. 1) and Counterclaim III of Home Point's Answer and Counterclaims (ECF No. 12).

As such, the remaining claims in this litigation are Home Point's Counterclaims for breach of contract (Counterclaim I) and breach of fiduciary duty (Counterclaim II) against the Underwriters, which are triable issues that shall proceed to discovery.

**CONCLUSION**

For the reasons stated above, Home Point's Partial Motion to Dismiss (ECF No. 11) is GRANTED. Specifically, Count I of Underwriters' Complaint (ECF No. 1) is PARTIALLY DISMISSED WITHOUT PREJUDICE insofar as it seeks a determination that Underwriters have no duty to indemnify Home Point in the Underlying Lawsuit. Because the issue of the Underwriters' duty to indemnify is not ripe, Underwriters lack standing to sue Defendants Sandra Moyer ("Moyer"),[9] Martin, Matthews, and Patterson, as no real dispute exists—at least, for now—between the Underwriters and the named plaintiffs in the underlying RESPA Lawsuit. As such, all claims asserted against Moyer, Martin, Matthews, and Patterson are DISMISSED WITHOUT PREJUDICE. Thus, Martin, Matthews, and Patterson's Motion to Dismiss (ECF No. 10) and Motion to Strike (ECF No. 31) are both DENIED AS MOOT. Turning to the Cross-Motions for Judgment on the Pleadings (ECF Nos. 29, 30), which this Court construes to be solely on the issue of the Underwriters' duty to defend Home Point in the Underlying Lawsuit, Home Point's Motion for Judgment on the Pleadings (ECF No. 29) is GRANTED. Specifically, with respect to the Underwriters' duty to defend Home Point in the underlying RESPA Lawsuit, judgment is entered in favor of Home Point with respect to Count I of the Underwriters' Complaint (ECF No. 1) and Counterclaim III of Home Point's Answer and Counterclaims (ECF No. 12). Accordingly, Underwriters' Motion for Judgment on the Pleadings (ECF No. 30) is DENIED.

Again, this Memorandum Opinion does not address Home Point's Counterclaims for breach of contract (Counterclaim I) and breach of fiduciary duty (Counterclaim II) against the

---

[9] The record is unclear as to whether service has been properly effectuated against Defendant Moyer.

18

Underwriters, as such counterclaims are triable issues that shall proceed to discovery.

A separate Order follows.

Date: March 29, 2024

/s/
Richard D. Bennett
United States Senior District Judge

19