IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOSE CERTIN UNDERWRITERS     *
AT LLOYD'S, LONDON,

                           *

      *Plaintiff/Counter Defendant*,       *    Civil Action No. RDB-23-405

    v.                         *

HOME POINT FINANCIAL CORP.,      *

      *Defendant/Counter Claimant.*

*     *     *     *     *     *     *     *     *     *     *     *     *

**MEMORANDUM OPINION**

This litigation is presently in the aftermath of the settlement of *Moyer et al. v. Mr. Cooper Group, Inc.* ("*Moyer*"), No. RDB-20-3449 (D. Md. filed Nov. 25, 2020). This Court has previously entered an order granting final approval of the settlement in *Moyer*. Specifically, the instant litigation involves a coverage dispute between Those Certain Underwriters at Lloyd's, London's (the "Underwriters") and its insured, Home Point Financial Corp. ("Home Point"). In brief, the parties the Underwriters and Home Point dispute whether an insurance policy covers the now-settled class action that alleged violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(a).

Presently before the Court in this insurance coverage dispute are three motions: two motions filed by the Underwriters—a Motion for Partial Dismissal of Home Point's Amended Counterclaim (hereinafter, the "Underwriters' Motion for Partial Dismissal") (ECF No. 45)[1]

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum

and a Motion for Leave to File Amended Complaint (hereinafter, the "Underwriters' Motion for Leave") (ECF No. 50) (collectively, the "Underwriters' Motions"); and one motion filed by non-parties Terry Patterson, Yvonne Mathews, Richard Martin, and Sandra Moyer (collectively, the "Underlying Class Representatives")—a Motion for Leave to File Opposition to the Underwriters' Motion for Leave to File Amended Complaint (hereinafter, the "Underlying Class Representatives' Motion for Leave") (ECF No. 51). While the Underlying Class Representatives' Motion for Leave (ECF No. 51) is moot as the Underwriters have withdrawn its request to rename the Underlying Class Representatives (ECF No. 52 at 1), the Underwriters' Motions (ECF No. 45; 50) are both opposed by Home Point (ECF No. 47 (Response in Opposition to the Underwriters' Motion for Partial Dismissal); 53 (Response in Opposition to the Underwriters' Motion for Leave))), and the Underwriters have filed replies in support of both motions (ECF Nos. 49; 60). The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons stated below, the Underwriters' Motion for Partial Dismissal of Home Point's Amended Counterclaim (ECF No. 45) is DENIED; the Underwriters' Motion for Leave to File Amended Complaint (ECF No. 50) is GRANTED; and the Underlying Class Representatives Motion for Leave to File Opposition to the Underwriters' Motion for Leave to File Amended Complaint (ECF No. 51) is DENIED AS MOOT.

## BACKGROUND

As detailed in this Court's prior Memorandum Opinion dated March 29, 2024, (ECF

---

Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

No. 36), this case involves a coverage question regarding Policy No. SUA WS20137-2006 (the "Policy"), a professional services liability policy that the Underwriters sold to Home Point on November 12, 2020, for the policy period of October 15, 2020 to October 15, 2021. Through the instant litigation (the "Coverage Action"), Underwriters and Home Point dispute whether the Policy covers a now-settled class action (the "Underlying Lawsuit" or "RESPA Lawsuit") pursued against Home Point that alleged violations of the Real Estate Settlement Procedures Act ("RESPA"). *Moyer et al. v. Mr. Cooper Group, Inc.*, No. RDB-20-3449 (D. Md. filed Nov. 25, 2020). The Court provides a brief overview on the background of the Underlying Lawsuit and this Coverage Action as relevant to the Underwriters' Motions (ECF Nos. 45; 50) below.

## I.    The Now-Settled Underlying RESPA Lawsuit

On October 27, 2020, Sandra Moyer, Richard Martin, Yvonne Matthews, and Terry Patterson filed the Underlying Lawsuit in the Circuit Court for Baltimore City. *Moyer*, No. RDB-20-3449 (D. Md. Nov. 25, 2020), ECF No. 3. Therein, the Underlying Class Representatives alleged violations of 12 U.S.C. § 2607(a), a RESPA provision that prohibits the payment of referral fees in connection with federally related mortgage loans. *Id.* Specifically, the Underlying Class Representatives alleged a kickback scheme between Home Point's predecessor, Maverick Funding Corporation ("Maverick"), and All Star Title, Inc. ("All Star"), a now-defunct title and settlement services company, whereby Maverick referred residential mortgage loans to All State for title and settlement services in exchange for payments from All Star that were laundered through third-party marketing companies. *Id.*

After Home Point removed the action to this Court based on federal question jurisdiction on November 25, 2020, *Moyer*, No. RDB-20-3449 (D. Md. Nov. 25, 2020), ECF

No. 1, the Underlying Lawsuit proceeded rather slowly, due in part to other similar cases filed in this District against various lenders alleged to have received and accepted kickbacks from All Star in violation of RESPA. Nevertheless, on June 21, 2024—approximately eight months after this Court granted the Underlying Class Representatives' motion for class certification, *Moyer*, No. RDB-20-3449 (D. Md. Oct. 11, 2023), ECF Nos. 73, 74—the parties in the Underlying Lawsuit filed a Joint Motion for Preliminary Approval of Class Action Settlement of All Claims Asserted Against Mr. Cooper Group, Inc. f/k/a Home Point Financial Corp. f/k/a Maverick Funding Corp., *Moyer*, No. RDB-20-3449 (D. Md. June 21, 2024), ECF No. 97. Through the proposed settlement, Home Point denied any wrongdoing but agreed to pay approximately $325,000 to the class (including service awards for the class representatives) and attorneys' fees and expenses not to exceed $450,000. *Id.* Following a telephone conference with the parties on July 1, 2024, this Court entered an order preliminarily approving the parties' settlement. *Moyer*, No. RDB-20-3449 (D. Md. July 1, 2024), ECF No. 100. Following a final fairness hearing on October 15, 2024, the Court entered an Order granting final approval of the class action settlement. *Moyer*, No. RDB-20-3449 (D. Md. Oct. 15, 2024), ECF No. 105.

## II.    This Coverage Action

On February 13, 2023, the Underwriters initiated the instant insurance dispute in this Court. The Underwriters' original Complaint (ECF No. 1) sought declaratory judgment that it had no duty to defend or indemnify the Underlying Lawsuit ("Count I of Underwriters' Original Complaint"). In addition to naming its insured Home Point as a Defendant, Underwriters' original Complaint also named the Underlying Class Representatives as

Defendants in this Coverage Action. (*Id.*)

On May 11, 2023, the Underlying Class Representatives—excluding Moyer, who does not appear to have been properly served in this matter—moved to dismiss the Underwriters' Complaint. (ECF No. 10.)  On June 12, 2023, Home Point also partially moved to dismiss the Underwriters' original Complaint insofar as the Underwriters seek a determination that Plaintiff has no duty to pay money damages or a settlement in the RESPA Lawsuit. (ECF No. 11.)  That is, according to Home Point, the Underwriters lacked constitutional standing on the question of indemnification during the pendency of the Underlying Class Action. (*Id.*)  With respect to the Underwriters' request seeking a declaratory judgment that it has no duty to defend Home Point in the RESPA Lawsuit, Home Point filed its original Answer and Counterclaims (ECF No. 12).  Therein, Home Point sought declaratory judgment that its claims for defense of the Underlying Lawsuit are insured under the Policy and that the Underwriters have an immediate, several, and indivisible duty to defend Home Point under the Policy in the Underlying Lawsuit and pay its full defense costs ("Counterclaim III of Home Point's Original Answer and Counterclaims"). (*Id.*)  In addition, Home Point alleged counterclaims for breach of contract ("Counterclaim I of Home Point's Original Answer and Counterclaims") and breach of fiduciary duty ("Counterclaim II of Home Point's Original Answer and Counterclaims") against the Underwriters. (*Id.*)  In September 2023, both the Underwriters and Home Point moved for judgment on the pleadings as to the parties' respective claims for declaratory judgment. (ECF Nos. 29 (Home Point); 30 (Underwriters).)

On March 29, 2024, this Court filed a Memorandum Opinion and Order addressing, among other things, the motions to dismiss and for judgment on the pleadings. (ECF Nos.

36; 37.)  Specifically, the Court granted Home Point's partial motion to dismiss, partially dismissing without prejudice Count I of the Underwriters' Original Complaint insofar as it sought a determination that Underwriters have no duty to indemnify Home Point in the underlying litigation.  (ECF No. 36 at 11–12.)  The Court explained that:

> Simply stated, there is no judgment to indemnify unless and until Home Point's liability is established in the Underlying Lawsuit.  As such, it would be premature and speculative for this Court to issue declaratory relief on the issue of indemnification.  For this reason, this Court concludes that it is inappropriate for it to exercise its jurisdiction on the issue of indemnification and will abstain from doing so.

(*Id.* at 12.)  Similarly, the Court dismissed without prejudice the Underlying Class Representatives, explaining that "no real dispute exists—at least, for now—between the Underwriters and the [Underlying Class Representatives]."  (*Id.* at 12–14.)  With respect to the parties' cross-motions for judgment on the pleadings, which the Court construed to be solely on the issue of the Underwriters' duty to defend Home Point in the Underlying Lawsuit, the Court granted Home Point's motion and denied the Underwriters' motion.  (*Id.* at 14–17.)  The Court emphasized that its filing did not address Home Point's remaining counterclaims, explaining that such claims were "triable issues that shall proceed to discovery."  (*Id.* at 17.)

On September 19, 2024, Home Point filed a Motion for Leave to File Amended Answer and Counterclaims.  (ECF No. 41.)  The next day, the Underwriters—through newly obtained counsel—filed a notice indicating the Underwriters' consent to Home Point's motion for leave.  (ECF No. 42.)  Accordingly, on September 25, 2024, this Court granted Home Point's motion for leave, (ECF No. 43), and Home Point's Amended Answer and Counterclaims was deem filed the same day, (ECF No. 44).  Rather than file an answer to Home Point's Amended Answer and Counterclaims, the Underwriters opted to file the

pending Motion for Partial Dismissal, (ECF No. 45).   Home Point has responded in opposition (ECF No. 47), and the Underwriters have filed a reply (ECF No. 49).

On December 6, 2024, the Underwriters filed the pending Motion for Leave to File Amended Complaint (ECF No. 50).   On December 9, 2024, the Underlying Class Representatives filed a Motion for Leave to File Opposition to the Underwriters' Motion for Leave to File Amended Complaint (ECF No. 51).   While the Underlying Class Representatives' Motion for Leave (ECF No. 51) is moot as the Underwriters later withdrew its request to rename the Underlying Class Representatives (ECF No. 52 at 1), the Underwriters' Motion for Leave to File Amended Complaint is opposed by Home Point (ECF No. 53), and the matter is fully briefed (ECF No. 60 (Underwriters' Reply)).   The Underwriters' Motions (ECF Nos. 45; 50) are ripe for review.

## STANDARD OF REVIEW

### I.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2).   The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Under the plausibility standard,

a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## II.    Motion to Amend Complaint Pursuant to Rule 15(a)

Rule 15(a) of the Federal Rules of Civil Procedure provides the general framework for amending pleadings. Specifically, Rule 15(a) provides that, after a response pleading is served, a plaintiff may amend his complaint "by leave of court or by written consent of the adverse party." In general, leave to amend a complaint pursuant to Rule 15(a) shall be "freely" granted "when justice so requires." FED. R. CIV. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lance v. Prince George's Cnty.*, 199 F. Supp. 2d 297, 300–01 (D. Md. 2002). Nevertheless, the matter is committed to the discretion of the district court, which may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011); *Steinburg v. Chesterfield Cnty. Plan. Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

### III.    Applicable Law

In diversity actions, a district court applies the substantive law and choice of law rules of the state in which the court sits. *Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 605 (D. Md. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In cases involving the interpretation of insurance policies, Maryland applies the doctrine of *lex loci contractus*, meaning the law of the place where the contract was made applies. *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). It is undisputed that the relevant insurance contracts were made in Michigan.[2] Accordingly, Michigan law governs the interpretation of the Policy.

### ANALYSIS

Presently before the Court are two motions filed by the Underwriters—a Motion for Partial Dismissal of Home Point's Amended Counterclaim (ECF No. 45) and a Motion for Leave to File Amended Complaint (ECF No. 50). The Court addresses the motions in the order filed below.

### I.    Underwriters' Motion for Partial Dismissal (ECF No. 45)

First filed of the pending motions is the Underwriters' Motion for Partial Dismissal of Home Point's Amended Counterclaim (ECF No. 45), which seeks dismissal with prejudice Count II of the Amended Counterclaims (hereinafter, the "Second Counterclaim") and prayer for attorneys' fees. With respect to its challenge to Home Point's Second Counterclaim, the Underwriters contend that an insurer is not a fiduciary of its insured as a matter of Michigan law, (ECF No. 45-1 at 3); and that, even assuming that Michigan law would recognize a

---

[2] As the Court detailed in its prior Memorandum Opinion in this case, "[t]he Policy was delivered to, and the premiums were paid from, Ann Arbor, Michigan, where Home Point is headquartered." (ECF No. 36 at 4.)

fiduciary relationship between insurer and insured, Home Point's Amended Counterclaims lack factual allegations to suggest that Underwriters were Home Point's fiduciary, (*id.* at 3–4). With respect to its challenge to Home Point's prayer for attorneys' fees, the Underwriters contend that, "[u]nder Michigan law, a policy holder is not permitted to recover as damages the attorney fees it expends in a coverage action such as this matter." (*Id.* at 4.) Home Point responded in opposition, (ECF No. 47), asserting the Underwriters' Motion for Partial Dismissal is a procedurally improper successive Rule 12 motion, (*id.* at 2–4), and further fails on the merits,[3] (*id.* at 5–8). The Underwriters filed a reply (ECF No. 49), refuting Home Point's argument that the motion for partial dismissal is procedurally inappropriate under Rule 12(g)(2) (*id.* at 3–7) and insisting that dismissal with prejudice is appropriate with respect to the Second Counterclaim (*id.* at 8–12) and prayer for attorneys' fees (*id.* at 12–13). As explained below, while the Court will not deny the motion as procedurally improper under Rule 12(g)(2), the Underwriters' Motion for Partial Dismissal of Home Point's Amended Counterclaim (ECF No. 45) fails substantively.

### A. Procedural Posture of the Motion

The Court must first consider Home Point's argument that Federal Rule of Civil Procedure 12(g)(2) precludes the Underwriters' Motion for Partial Dismissal. Federal Rule of Civil Procedure 12(g)(2) provides: "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense

---

[3] With respect to the Underwriters' challenge to the Second Counterclaim, Home Point avers that it has alleged a bad faith claim, and that "in focusing myopically on the appearance of the words 'fiduciary duty' in the Amended Counterclaims, [Underwriters] understates the weight of Michigan authority in support of [such] claim, and ignores the substance of the claim," (ECF No. 47 at 5–6); and that its bad faith claim is sufficiently alleged, (*id.* at 6–7). With respect to the Underwriters' challenge to Home Point's prayer for attorneys' fees, Home Point avers that this challenge is premature. (*Id.* at 7–8.)

or objection that was available to the party but omitted from its earlier motion." Under Rule 12(h)(2), a successive motion to dismiss for "failure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleadings allowed or ordered under Rule 7(a); (B) by a motion [for judgment on the pleadings] under Rule 12(c); or (C) at trial." Rule 12(h)(3) exempts challenges to a court's subject matter jurisdiction. Notably, while Rule 12(g)(2) provides that a Rule 12(b)(6) motion must be made at the earliest possible opportunity, "many courts have interpreted [Rule 12(g)(2)] permissively and have accepted subsequent motions on discretionary grounds." *F.T.C. v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 383 (D. Md. 2009).

According to Home Point, under Rule 12(g)(2), the Underwriters have waived the right to move to dismiss Home Point's Second Counterclaim entitled "Breach of Fiduciary Duty" and prayer for attorneys' fees because these arguments were available but not raised in the Underwriters' Motion for Judgment on the Pleadings (ECF No. 30) filed before this Court in September 2023. (ECF No. 47 at 2–4.) It is true that Home Point's Second Counterclaim entitled "Breach of Fiduciary Duty" and prayer for attorneys' fees appeared in Home Point's original Answer and Counterclaims. (*Compare* ECF No. 12 ¶¶ 42–45 *with* ECF No. 44 ¶¶ 58–63 (Second Counterclaim); *compare* ECF No. 12 at Prayer for Relief (e) *with* ECF No. 44 at Prayer for Relief (f) (prayer for attorneys' fees).) It is further true that, while Home Point amended its Second Counterclaim to include additional factual allegations concerning the Underwriters' refusal to pay for its reasonable defense costs following this Court's entry of judgment on the pleadings in Home Point's favor on the Underwriters' duty to defend (ECF No. 44 ¶ 62) and the Underwriters' denial of indemnification for settlement of the Underlying Lawsuit "based on an [alleged] acknowledged 'disagree[ment] with [this] Court's ruling'" (*id.*

¶ 63), the basis of Home Point's Second Counterclaim remains unchanged.  And as Home Point notes, the Underwriters previously filed a motion under Rule 12(c) seeking an order for judgment on the pleadings in Underwriters' favor on the parties' claims for declaratory judgment, and that motion did not raise the issue of Home Point's Second Counterclaim and prayer for attorneys' fees.  (ECF No. 30.)

While the factual footing has only modestly changed and the basis of Home Point's Second Counterclaim and prayer for attorneys' fees remains unchanged, this is the first Rule 12 motion directed to the operative Amended Answer and Counterclaims, and the first Rule 12(b) motion filed by Underwriters in this case.  Accordingly, the Court will not deny the Underwriters' Motion for Partial Dismissal (ECF No. 45) as procedurally improper.

## B.  The Underwriters' Substantive Arguments Under Rule 12(b)(6)

The Court will first address the Underwriters' challenge to the Second Counterclaim entitled "Breach of Fiduciary Duty" before turning to discuss the Underwriters' challenge to Home Point's prayer for attorneys' fees.

### 1.  The Underwriters' Challenge to Home Point's Second Counterclaim

Through the pending motion requesting partial dismissal, the Underwriters contend that Home Point's Second Counterclaim—entitled "Breach of Fiduciary Duty" (ECF No. 44 ¶¶ 58–63)—must be dismissed, as an insurer is not a fiduciary of its insured as a matter of Michigan law, (ECF No. 45-1 at 3); and that, even assuming that Michigan law would recognize a fiduciary relationship between insurer and insured, Home Point's Amended Counterclaims lack factual allegations to suggest that Underwriters were Home Point's fiduciary, (*id.* at 3–4). Home Point avers that it has alleged a bad faith claim, and that "in focusing myopically on the

appearance of the words 'fiduciary duty' in the Amended Counterclaims, [Underwriters] understates the weight of Michigan authority in support of [such] claim, and ignores the substance of the claim," (ECF No. 47 at 5–6); and that its bad faith claim is sufficiently alleged, (*id.* at 6–7).

While Home Point's Second Counterclaim is entitled "Breach of Fiduciary Duty," no fiduciary duty claim is advanced against the Underwriters, as Home Point appears to concede. (ECF No. 47 at 5–7.) While Home Point contends that "the duty of good faith an insurer owes its insured is properly classified as a 'fiduciary' duty," (ECF No. 47 at 5 n.2), established Michigan law makes clear that this is inaccurate. To plead a claim for breach of fiduciary duty, the plaintiff must prove that a fiduciary relationship exists. *Highfield Beach v. Sanderson*, 954 N.W.2d 231, 247 (Mich. Ct. App. 2020). In *Crossley v. Allstate Co.*, 400 N.W.2d 625 (Mich. Ct. App. 1986)—the case cited by the Underwriters, (ECF No. 45-1 at 3)—the Court of Appeals of Michigan explained that the "relationship [between an insurer and insured] is not fiduciary in nature." 400 N.W. 2d at 697 (citing *Hearn v. Rickenbacker*, 364 N.W.2d 371, 372 (Mich. Ct. App. 1985)); *see also Sharma v. Metro. Life Ins. Co.*, No. 249314, 2004 Mich. App. LEXIS 3369, at *14 (Mich. Ct. App. Dec. 14, 2004) ("[T]he relationship between an insurer and its insured is contractual, not fiduciary, in nature."). Thus, to the extent Home Point's Second Counterclaim alleges a counterclaim for breach of fiduciary duty, the source of the Underwriters' duty must be something separate from the insurance contract. Because the only duty Home Point suggests the Underwriters undertook was to abide by the insurance contract, Home Point has not plead a claim for breach of fiduciary duty under the facts alleged.

Rather, Home Point's Second Counterclaim is a bad faith claim, (ECF No. 47 at 5–7),

which is a duty the Underwriters owed Home Point under Michigan law.  In *Commercial Union Insurance Co. v. Medical Protective Co.*, 356 N.W.2d 648 (Mich. Ct. App. 1984), the Court of Appeals of Michigan explained: "It is clear that the insurer owes the insured a duty of good faith.  Thus, the insured has a direct cause of action against the insurer for a breach of this duty which exposes him to excess liability."  *Id.* at 650.  Home Point's Amended Answer and Counterclaims alleges that, as Home Point's insurer, the Underwriters owed Home Point a duty of good faith, and the Underwriters' naming of the Underlying Class Representatives in this action "significantly compromised Home Point's ability to defend the [underlying class action], exposed Home Point to increased financial risk resulting from the [underlying class action], and put the interest of [the Underwriters] in avoiding payment on a claim ahead of the interests of Home Point in managing its potential civil liability."  (ECF No. 44 ¶ 61.)  Accordingly, the Second Counterclaim, which the Court construes, not as a claim for breach of fiduciary duty, but as a claim for violation of the Underwriters' duty of good faith, is sufficiently plead.

## 2. The Underwriters' Challenge to Home Point's Prayer for Attorneys' Fees

Home Point includes a request that the Court "[a]ward Home Point its attorneys' fees, costs, and expenses" in its prayer for relief.  (ECF No. 44 at Prayer for Relief (f).)  Through the pending Rule 12(b)(6) motion, the Underwriters argue this request for relief should be dismissed, as "[u]nder Michigan law, a policy holder is not permitted to recover as damages the attorney fees it expends in a coverage action such as this matter."  (ECF No. 45-1 at 4.)  Home Point avers that this challenge is premature.  (ECF No. 47 at 7–8.)

Preliminarily, and while this issue is not explicitly addressed by the parties, the Court

observes that there is divergent authority as to whether Rule 12(b)(6) allows the dismissal of a request for a remedy such as Home Point's prayer for attorneys' fees. *See Facchetti v. Vest*, No. 5:15-cv-00049, 2016 U.S. Dist. LEXIS 92730, at *2–8 (W.D. Va. July 18, 2016) (collecting cases and discussing whether a challenge to a request for attorneys fees was appropriate under Rule 12(b)(6) or 12(f)); *Marion v. Anchor Hocking, LLC*, No. 24-cv-3594-ABA, 2025 U.S. Dist. LEXIS 245353, at * 4–8 (D. Md. July 22, 2025) ("[A]s to the question of whether a defendant may move to dismiss a particular form of relief (such as punitive damages) at the pleadings stage even where the pertinent cause of action permits that form of relief, the Court concludes that it may."). This is because Rule 12(b)(6) concerns the "failure to state a *claim* upon which *relief* can be granted." FED. R. CIV. P. 12(b)(6) (emphasis added). And while the Fourth Circuit has affirmed dismissals of requests for relief pursuant to Rule 12(b)(6), it does not appear that the Fourth Circuit was asked to decide whether Rule 12(b)(6) was the appropriate procedural tool for the dismissal of a requested remedy. *Francisco v. Doherty, Sheridan & Grimaldi, L.L.P.*, 178 F.3d 1283, (4th Cir. 1999) (unpublished table decision) (affirming, without discussion, the district court's Rule 12(b)(6) dismissal of claims for emotional distress damages and punitive damages). Nevertheless, because the issue is not explicitly addressed by the parties, the Court proceeds to address the Underwriters' Rule 12(b)(6) challenge to Home Point's prayer for attorneys' fees.

In brief, the Court will reject the Underwriters' request to dismiss Home Point's prayer for attorneys' fees at this early stage of the proceedings. The Court acknowledges that the "American rule" governs the recovery of attorneys' fees in Michigan, meaning "attorney fees are generally not allowed, as either costs or damages, unless recovery is expressly authorized

15

by statute, court rule, or a recognized exception." *Burnside v. State Farm Fire & Cas. Co.*, 528 N.W.2d 749, 751 (Mich. Ct. App. 1995).  This Court further recognizes that "the Michigan Court of Appeals has rejected explicitly the position that a policyholder may recover attorney fees 'incurred as a result of an insurer's bad-faith refusal to pay an insured's claim." *Alticor Glob. Holdings, Inc. v. Am. Int'l Specialty Lines Ins. Co.*, No. 1:17-CV-388, 2020 U.S. Dist. LEXIS 265125, at *10 (W.D. Mich. Sept. 30, 2020) (citing *Burnside*, 528 N.W.2d at 430).  Still, without making any speculation as to the likelihood that Home Point will be able to recover attorneys' fees, such an award *could* be available to Home Point.  *See* MICH. COMP. LAWS § 600.2591 (2025) (providing that upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the non-prevailing party and their attorney).  Accordingly, the Court will not dismiss with prejudice Home Point's prayer for attorneys' fees.

In sum, Underwriters' Motion for Partial Dismissal of Home Point's Amended Counterclaim (ECF No. 45) is DENIED.

## II. Underwriters' Motion for Leave to File Amended Complaint (ECF No. 50)

The Underwriters describe its Motion for Leave to File Amended Complaint (ECF No. 50) as "seek[ing] leave to amend [the] complaint to clarify the proper parties . . . and add certain other parties," and "reframing the issues on which [the Underwriters] seek declarations."  With respect to its request to clarify and add parties, the Underwriters seek (1) to add as a plaintiff Markel International Insurance Company Limited ("Markel"), another insurer that holds part of the security for the insurance policy at issue; (2) to clarify that the

proper defendant in this action is Mr. Cooper Group, Inc. ("Mr. Cooper"), who is the successor in interest to Home Point; and (3) to name again the Underlying Class Representatives, though the Underwriters later withdrew its request to rename the Underlying Class Representatives and submitted a further revised proposed Amended Complaint reflecting as much,  (ECF No. 52 at 1).  (ECF No. 50-1 at 2, 6.)  With respect to its request to reframe the issues on which it seeks declarations, the Underwriters seek to add the following questions.  In Count I of the Underwriters' Proposed Amended Complaint, the Underwriters seek declaratory judgment as to whether the attorneys' fees for which Home Point is now seeking indemnification as defense costs are reasonable and necessary.  (ECF No. 60-1 ¶¶ 42–50.)  In Count II of the Underwriters' Proposed Amended Complaint, the Underwriters seek declaratory judgment as to whether the Underwriters have a duty to indemnify its insured based on a "Specific Claim Exclusion" in the applicable insurance policy.  (*Id.* ¶¶ 51–57.)  In Count III of the Underwriters' Proposed Amended Complaint, the Underwriters seek declaratory judgment as to whether the insurance policy provides indemnity for the settlement in the RESPA Lawsuit for various other reasons, and, as alternative relief, whether there should be an allocation of the amounts paid in settlement in the RESPA Lawsuit between covered and non-covered claims.  (*Id.* ¶¶ 58–67.)  Notably, in Count IV of the Underwriters' Proposed Amended Complaint, the Underwriters retain its earlier request for a declaratory judgment as to whether the Underwriters have a duty to defend or indemnify the Underlying Lawsuit, (*id.* ¶¶ 68–79), though the proposed Amended Complaint makes clear—via a footnote—that it is retaining its earlier request for declaratory judgment as to the duty to defend "for preservation purposes."  (ECF No. 60-1 at 16–17 n.3.)  According to the

Underwriters, its motion should be granted pursuant to FED. R. CIV. P. 15(a)(2), as the proposed amendment will not prejudice any party, (ECF No. 50 at 7–8); it has acted in good faith, (*id.* at 8–9); and amendment is not futile, (*id.* at 9–14).  As noted, Home Point has responded in opposition to the Underwriters' Motion for Leave (ECF No. 53), and the Underwriters have replied (ECF No. 60).  In brief, the parties dispute whether the Underwriters' proposed amendment is prejudicial and/or futile.  In the absence of prejudice, bad faith, and futility, and in light of the Fourth Circuit's policy to "liberally allow amendment," *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010), the Court will grant the Underwriters' Motion for Leave to File Amended Complaint (ECF No. 50).

## A. Whether the Underwriters' Proposed Amendment is Prejudicial

Under Rule 15(a)(2), "prejudice means that the party opposing the amendment would be hindered in the preparation of its case, or would have been prevented from taking some measure in support of its position."  61A AM. JUR. 2D *Pleading* § 723.  Courts may find undue prejudice sufficient to justify denying leave to amend if a new claim or defense would force the non-moving party to "expend significant additional resources to conduct discovery and prepare for trial," it would "significantly delay the resolution of the dispute," or it would "prevent the plaintiff from bringing a timely action in another jurisdiction."  *Id.*

As the Fourth Circuit has explained, "[a]n amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred."  *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (citing *Davis v. Piper Aircraft Co.*, 615 F.2d 606, 613 (4th Cir. 1980), *cert. denied*, 448 U.S. 911 (1980)).  To be sure, "a court may consider a movant's 'undue delay' or 'dilatory motive' in deciding whether to grant

leave to amend under Rule 15(a)." *Krupski v. Costa Crociere, S.p.A.*, 560 U.S. 538, 553 (2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). But, "[d]elay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999).

Here, Home Point asserts that the Underwriters' proposed amendments should be rejected as "unduly prejudice[ial]" to Home Point, making much of the fact that the Underwriters' proposed amendment was filed "nearly two years after [the Underwriters] first su[ed] [the] insured," despite the fact that, according to Home Point, these issues were all available to Underwriters when it first filed its original Complaint. (ECF No. 53 at 15–16.) The Underwriters assert that the proposed amendment would not result in any prejudice, taking issue with Home Point's suggestion that the Underwriters' proposed amendment was unduly delayed and asking the Court to consider "the current status of the litigation." (ECF No. 60 at 10–12.)

At bottom, the Court finds that prejudice is not implicated here. No scheduling order has been entered and discovery has not begun in this matter. While it is true that Underwriters initiated this litigation over two years ago, the issue of indemnification only recently became ripe following settlement in the RESPA Lawsuit.

### B. Whether the Underwriters' Proposed Amendment is Futile

A district court "may deny leave if amending the [pleading] would be futile—that is, if the proposed amended [pleading] fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)) (alterations added). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules

and accompanying standards." *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting

*Katyle*, 637 F.3d at 471). That is, an amendment is futile "when the proposed amendment is

clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th

Cir. 1986). Therefore, a "proposed amendment [is] futile if the new claim would

not . . . survive[] a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Davison*,

912 F.3d at 690. However, as Judge Gallagher of this Court explained in *Bioiberica Nebraska,*

*Inc. v. Nutramax Manufacturing, Inc.*, No. SAG-18-3133, 2019 U.S. Dist. LEXIS 176925 (D. Md.

Oct. 10, 2019):

> [I]t does not follow that every plaintiff seeking leave to amend their claims must
> demonstrate that his claims can withstand a Rule 12(b)(6) motion. Such a
> requirement would render superfluous the Fourth Circuit's definition of a futile
> claim as one that is "clearly insufficient or frivolous on its face," and would run
> contrary to the Fourth Circuit's well-established "policy to liberally allow
> amendment in keeping with the spirit of Federal Rule of Civil Procedure
> 15(a)[.]"

*Id.* at *8 (internal citations omitted).

Home Point's response in opposition to the Underwriters' Motion for Leave to Amend

is largely focused on futility of the Underwriters' proposed amended claims for declaratory

judgment. (ECF No. 53 at 10–15.) First, Home Point takes issue with Count I of the

Underwriters' Proposed Amended Complaint, which the insured characterizes as a "frontal

assault on the Court's March 2024 Decision" that the Underwriters must pay Home Point's

defense costs. (*Id.* at 10–12.) According to Home Point, this Court previously decided that

the Underwriters "must pay Home Point its full defense costs," and the Underwriters are

merely seeking "to avoid and relitigate" the prior Court's decision in asking the Court to

determine the defense costs to which Home Point is entitled. (*Id.*) Second, Home Point

contends that the Underwriters' proposed amendments relating to its duty to indemnify—Counts II–IV of the Underwriters' Proposed Amended Complaint—should be rejected as futile, claiming these defenses were not raised in the Underwriters' December 4, 2020 reservation of rights letter (ECF No. 1-3), original Complaint (ECF No. 1), or Answer (ECF No. 28) to Home Point's original Answer and Counterclaims, and further meritless. (ECF No. 53 at 12–15.) With respect to Count II of the Underwriters' Proposed Amended Complaint, Home Point argues that this count "is doomed because [the Underwriters] cannot meet its burden of proof to establish that the Specific Claims Exclusion applies to the RESPA Litigation." (*Id.* at 13–14.) That is, according to Home Point, the Specific Claims Exclusion is inapplicable here, because the loss resulting from the RESPA Litigation is not "similar or interrelated" to the matter of *Fangman v. Genuine Title, LLC.* (*Id.*) With respect to Count III of the Underwriters' Proposed Amended Complaint, Home Point asserts that the Underwriters are attempting to raise new issues that were waived; that "[the Underwriters] fail[] as a matter of basic pleading to articulate how or why Maverick's conduct as Home Point's predecessor-in-interest would trigger a defense to [the Underwriters'] indemnity obligations to Home Point under a 'claims made' Policy for the claim made in the RESPA Lawsuit against Home Point, or the retroactive dates of the Policy; and further that "[the Underwriters] likewise fail[] to allege how the Policy's 'retroactive dates' could bar coverage for the RESPA Lawsuit Settlement despite the class period falling after the applicable retroactive dates of the Policy." (*Id.* at 14–15.) With respect to Count IV of the Underwriters' Proposed Amended Complaint, Home Point argues that this claim "unnecessarily retains its request for declaratory judgment as to the duty to defend." (*Id.* at 15.)

In its reply, the Underwriters insist that it is "not trying to relitigate anything" and that the "proposed Amended Complaint is not in any way futile." (ECF No. 60 at 1.) With respect to Count I of the Proposed Amended Complaint, the Underwriters aver that this Court has never ruled on what defense costs Home Point would be entitled to receive, or what hourly rate would be reasonable for defense counsel in the RESPA Lawsuit. (*Id.* at 2–6.) With respect to Counts II and III of the Proposed Amended Complaint, the Underwriters insist that these indemnity issues have not been waived and are not futile. (*Id.* at 6–9.) With respect to Count IV of the Proposed Amended Complaint, the Underwriters aver that Home Point has cited no authority for the proposition that they should not be allowed to retain their earlier request for a declaratory judgment as to the duty to defend for preservation purposes, and further claim that "it only makes sense for the Court to do so, as it would streamline and efficiently package the pleadings for any eventual appeal that may take place." (*Id.* at 10.)

While the Court emphasizes that it will not revisit its prior determination on the Underwriters' duty to defend Home Point in the Underlying Lawsuit, the Court is unpersuaded by Home Point's arguments that the Underwriters' proposed Amended Complaint is futile "on its face." When evaluating a proposed amendment under Rule 15(a), the Court merely asks whether "the proposed amendment is clearly insufficient or frivolous *on its face*." *Johnson*, 785 F.2d at 510 (emphasis added). All of Home Point's arguments are best left addressed on a Rule 12 motion so that the parties may benefit from the Court's review of full briefings specifically addressing those issues. Accordingly, the Court will grant the Underwriters' Motion for Leave to File Amended Complaint (ECF No. 50).

**CONCLUSION**

For the reasons stated above, (1) the Underwriters' Motion for Partial Dismissal of Home Point's Amended Counterclaim (ECF No. 45) is DENIED; (2) the Underwriters' Motion for Leave to File Amended Complaint (ECF No. 50) is GRANTED; and the Underlying Class Representatives' Motion for Leave to File Opposition to Underwriters' Motion for Leave to File Amended Complaint (ECF No. 51) is DENIED AS MOOT.

A separate Order follows.

Date: August 29, 2025                              /s/
                                         _____
                                         Richard D. Bennett
                                         United States Senior District Judge